1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAREN PENOZA,

                         Plaintiff,

       v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                    Defendant.

Case No. C15-1825-RAJ

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

13

14

15

16

17

18

19

20

21

22

23

      Karen Penoza appeals the Administrative Law Judge's (ALJ's) decision finding her not

disabled. Ms. Penoza contends the ALJ erred in: (1) finding she did not have a medically

determinable physical impairment; (2) evaluating the opinions of Richard Coder, Ph.D., Matthew

Comrie, Psy.D., and Cynthia Collingwood, Ph.D.; (3) improperly discounting her General

Assessment of Functioning (GAF) score; (4) evaluating the credibility of her symptom

testimony; (5) evaluating the severity of her medically determinable mental impairment; and, (6)

engaging in a pattern or practice of biased decision making affecting the ALJ's decision

regarding Ms. Penoza and persons like her. Dkt. 22 at 2. As discussed below, the Court

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to
Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as
defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties
should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

1    **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further

2    administrative proceedings.

### BACKGROUND

4    Ms. Penoza's application(s) for benefits alleging disability commencing on January 31,

5    2011, were denied initially and on reconsideration.[2]  Tr. 13.  The ALJ conducted a hearing on

6    December 9, 2013, and thereafter issued a decision finding Ms. Penoza not disabled and denying

7    benefits.  Tr. 13-24.

### THE ALJ'S DECISION

9    Utilizing the five-step disability evaluation process,[3] the ALJ found:

10   **Step one:**  Ms. Penoza has not engaged in substantial gainful activity since January 31,
     2011, the alleged onset date.

11

12   **Step two:**  Ms. Penoza has a medically determinable impairment of generalized anxiety
     disorder.  However, Ms. Penoza does not have an impairment or combination of
13   impairments that has significantly limited (or is expected to significantly limit) the ability
     to perform basic work-related activities for 12 consecutive months.  Therefore, Ms.
     Penoza does not have a severe impairment or combination of impairments.  Accordingly,
14   Ms. Penoza is not disabled.

15   Tr. 18.  Because the ALJ found Ms. Penoza not disabled at step two, she did not reach

16   subsequent steps in the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  The

17   Appeals Council denied Ms. Penoza's request for review making the ALJ's decision the

18

19

20   [2] There appears to be some question as to whether Ms. Penoza applied for both disability insurance
     benefits (DIB) and supplemental security income (SSI) or only for DIB.  The ALJ's decision indicates
21   both DIB and SSI applications were filed.  Tr. 13.  However, at the hearing the ALJ only addressed the
     DIB application and, as Ms. Penoza notes, the administrative record does not appear to include an SSI
     application.  Dkt. 22 at 6; Tr. 37.  The parties do not argue that the resolution of this question is necessary
22   the Court's ultimate determination of whether the ALJ's non-disability finding is supported by substantial
     evidence and free of legal error.  Accordingly, the Court makes no determination either way with respect
23   to this question but directs the ALJ, on remand, to clarify whether any such SSI claim was filed.
     [3] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

1  Commissioner's final decision. Tr. 1-7.[4]

2  **DISCUSSION**

3  **A.    The ALJ's Evaluation of the Medical Evidence**

4  In general, more weight should be given to the opinion of a treating physician than to a

5  non-treating physician, and more weight to the opinion of an examining physician than to a

6  nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a

7  treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected

8  only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining

9  physician's opinion may not be rejected without "specific and legitimate reasons supported by

10  substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the

11  'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts

12  and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

13  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d

14  715, 725 (9th Cir. 1998)). "The Commissioner may reject the opinion of a non-examining

15  physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d

16  1240, 1244 (9th Cir. 1998).

17  At step two of the sequential evaluation, the Commissioner must determine "whether the

18  claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*,

19  80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden

20  to show that (1) she has a medically determinable physical or mental impairment, and (2) the

21  medically determinable impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

22  A "'physical or mental impairment' is an impairment that results from anatomical, physiological,

23
--------
[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D); 20 C.F.R. § 404.1521. Thus, a medically determinable impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. "'Regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings[.]'" *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p); 20 C.F.R. 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both"). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g).

In addition to producing evidence of a medically determinable physical or mental impairment, the claimant bears the burden at step two of establishing that the impairment or impairments is "severe." *See Bowen*, 482 U.S. at 146. An impairment or combination of impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). "The step two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). However, the claimant has the burden of proving his "impairments or their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

## 1. Finding No Medically Determinable Physical Impairment

Ms. Penoza contends the ALJ erred in finding she had no medically determinable physical impairment at step two. Dkt. 22 at 7-9. Specifically, she contends the ALJ erred in failing to find psoriatic arthritis and spondylitis to be medically determinable impairments. *Id.* Ms. Penoza contends the ALJ erred in evaluating the opinion of Paul B. Brown, M.D., Ph.D., which, she argues, establishes psoriatic arthritis and spondylitis as medically determinable impairments. *Id.* The Court agrees the ALJ erred in evaluating these impairments at step two.

Dr. Brown is Ms. Penoza's treating rheumatologist. Tr. 2240. Dr. Brown indicated he had been treating Ms. Penoza for over ten years for the conditions of psoriatic arthritis and spondylitis. *Id.* In January 2013, Dr. Brown completed a physical functional evaluation form supplied by Washington State Department of Social and Health Services (DSHS) for the purpose of evaluating eligibility for public assistance. Tr. 2228. In that form Dr. Brown indicated diagnoses of psoriatic arthritis, ankylosing spondylitis, low back pain and osteoarthritis. Tr. 2229. Dr. Brown indicated that these impairments cause marked and severe impairments in the areas of sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping and crouching. *Id.* Dr. Brown indicated that Ms. Penoza should perform no repetitive tasks, no prolonged sitting, standing, walking, no heavy lifting or carrying, no reaching, pushing, pulling, no bending, kneeling, squatting, twisting or climbing. *Id.* Dr. Brown indicated that, in terms of "work level", Ms. Penoza was "severely limited", meaning she was "unable to meet the demands of sedentary work." Tr. 2230.

The ALJ gave "little weight" to Dr. Brown's opinions that Ms. Penoza was unable to meet the demands of even sedentary work due to psoriatic arthritis, ankylosing spondylitis, low back pain and osteoarthritis for the following reasons: the assessment was inconsistent with the

longitudinal treatment history and performance on physical examinations; there are no x-rays, CT scans, MRIs, or bone scans to support Dr. Brown's opinions; the only physical examination in the record was normal and the claimant's sedimentation rate and C-reactive protein labs were normal; and, Dr. Brown's treatment records do not substantiate his assessments. Tr. 22-23. None of these reasons are sufficient to discount Dr. Brown's assessment.

First, the ALJ's general statement that Dr. Brown's assessment is "inconsistent with the longitudinal treatment history" is not sufficient to discount his opinion. Tr. 22. In general, a conclusory statement finding a medical opinion is inconsistent with the overall record is insufficient to reject the opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Specifically, the Ninth Circuit has found that:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Id.* Here, the ALJ does not identify specific inconsistencies between Dr. Brown's opinion and the longitudinal record and, as such, this was not a sufficient reason to discount his opinion.

Second, the ALJ's reference to the "normal" physical examination in the record is also not a sufficient basis to discount Dr. Brown's opinion. Tr. 22. Contrary to the ALJ's finding, the physical examination the ALJ refers to was not conducted by Dr. Brown but was conducted as part of a neurological consultation by Mary Reif, M.D., in November 2011. Tr. 20, 2178. Ms. Penoza was referred to Dr. Reif by Dr. Brown specifically due to concern regarding a tremor in her hands. Tr. 2181. Thus, while Dr. Reifi noted that Ms. Penoza was being treated for psoriatic arthritis and spyondylitis, she did not evaluate her with respect to those impairments but only performed a neurological evaluation to assess the concern about a hand tremor. Tr. 2178-

2183.  The ALJ fails to explain how the normal results on a neurological evaluation (assessing general areas such as gait and balance, reflexes, atrophy, strength, sensation, and coordination) contradict or undermine Dr. Brown's diagnosis of psoriatic arthritis and spondylitis or his opinion on the limitations caused by those impairments.  *See Embrey*, 849 F.2d at 421-22 (conclusory reasons are insufficient and do "not achieve the level of specificity" required to justify rejecting a treating opinion).  Moreover, there is no evidence indicating that abnormal sedimentation rate and C-reactive protein labs are necessary to diagnose psoriatic arthritis or spondylitis.  Thus, without more, the fact that Ms. Penoza's sedimentation rate and C-reactive protein labs were normal does not undermine Dr. Brown's opinion.

Third, the ALJ also notes that there are no x-rays, CT scans, MRIs, or bone scans to support Dr. Brown's opinions.  Tr. 23.  However, Dr. Brown's opinion is supported by other objective signs, as noted in his treatment notes, including that Ms. Penoza exhibited multiple swollen joints as well as diffuse muscle spasm, reduced chest expansion, reduced grip strength, reduced LS-spine flexion and extension, and that her psoriasis appeared to have worsened.  Tr. 2249-2250; *see* 20 C.F.R. 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both"); 20 C.F.R. § 404.1502(g) ("Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).").  Dr. Brown also appears to indicate on the DSHS form that Ms. Penoza has had "multiple abnormal scans."  Tr. 2229.  The ALJ did not address this notation or seek to develop the record regarding the scans Dr. Brown was referring to.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop the record is triggered when there is ambiguous evidence or the record is inadequate to allow for proper evaluation of evidence).  Accordingly, the lack of x-rays or scans was also not a sufficient reason to discount Dr. Brown's

assessment and diagnoses of psoriatic arthritis and spondylitis.  Finally, as noted above, contrary to the ALJ's finding, Dr. Brown's treatment records, noting multiple swollen joints, diffuse muscle spasm, reduced chest expansion, reduced grip strength, and reduced LS-spine flexion and extension, do appear to provide support for his assessments.  Tr. 2249-2250

In sum, the ALJ failed to give specific and legitimate reasons for discounting Dr. Brown's opinion.  As such substantial evidence does not support the ALJ's conclusion at step two that psoriatic arthritis and spondylitis are not medically determinable impairments.  Moreover, the Court cannot conclude that this error was harmless because these impairments were not severe.  The Court reviews the ALJ's decision for legal error and to determine whether it is supported by substantial evidence, but cannot review a finding that was not made such as, in this case, whether Ms. Penoza's psoriatic arthritis and spondylitis are severe.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Even if this were proper, Dr. Brown's opinion, which the ALJ failed to properly reject, indicated that Ms. Penoza had marked and severe functional limitations in several areas affecting her ability to perform basic work activities.  Tr. 2229.  Thus, the Court cannot conclude that the evidence establishes no more than "a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).  Accordingly, on remand, the ALJ should reevaluate Ms. Penoza's psoriatic arthritis and spondylitis, including Dr. Brown's opinion, at step two.

2. **Richard Coder, Ph.D., Matthew Comrie, Psy.D., and Cynthia Collingwood, Ph.D.**

Ms. Penoza contends the ALJ misevaluated the opinions of Dr. Coder, Dr. Comrie and Dr. Collingwood regarding her ability to respond appropriately to routine changes in the

workplace. Dkt. 22 at 9-12. The Court agrees.

### i. Dr. Coder

Dr. Coder performed a psychological evaluation of Ms. Penoza in July 2012. Tr. 2201-2207. Dr. Coder performed a clinical interview and mental status examination (MSE), diagnosed Ms. Penoza with generalized anxiety disorder and assessed a GAF of 55. Tr. 2205. Dr. Coder opined that Ms. Penoza's ability to reason, understand, remember and sustain concentration was good and that her social interactions and interpersonal relationships are appropriate. Tr. 2206. However, Dr. Coder also opined that the likelihood of Ms. Penoza being able to respond appropriately to routine changes in the workplace was "guarded." *Id.*

The ALJ assigned very little weight to Dr. Coder's opinion that the likelihood of Ms. Penoza being able to respond appropriately to routine changes in the workplace was "guarded." Tr. 22. The ALJ discounted Dr. Coder's opinion in part on the grounds that he did not point to any portion of the evaluation or his observations as support for this opinion and nothing in the "evaluation or the record as a whole supports this statement." *Id.* An ALJ may discount a medical opinion that is "conclusory, brief and unsupported by the record as a whole … or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004). Here, however, substantial evidence does not support this reason for discounting Dr. Coder's opinion because his opinion does appear to be supported by aspects of his evaluation. Specifically, during the MSE, Dr. Coder noted that Ms. Penoza showed "evidence of psychomotor agitation, as seen when her speech was pressured and she moved about ceaselessly in the exam chair", and that there was "evidence of deterioration and decompensation in the work place" and "evidence of deterioration and decompensation in overall ability to function." Tr. 2203, 2205. Thus, this was not a valid reason, in this case, to discount Dr. Coder's opinion.

1    The ALJ also discounted Dr. Coder's opinion as "vague" because he did not explain what

2    was meant by "guarded" and did not provide any specific limitations stemming from Ms.

3    Penoza's ability to respond to changes.  Tr. 22.  The Court agrees that Dr. Coder' opinion that

4    Ms. Penoza's ability to respond appropriately to changes is "guarded" is not ideal in its level of

5    detail.  Tr. 2206.  However, Dr. Coder's opinion does indicate that Ms. Penoza's generalized

6    anxiety disorder did impact her ability to respond appropriately to routine changes in the

7    workplace and the abnormal findings evidenced in the MSE provide some basis for this finding.

8    Tr. 2206.  To the extent the ALJ found this portion of Dr. Coder's opinion vague or ambiguous,

9    she had a responsibility to further develop the record not to simply reject the opinion on that

10   basis.  *See Mayes*, 276 F.3d at 459 (duty to further develop the record triggered when there is

11   ambiguous evidence or the record is inadequate to allow for proper evaluation of evidence).

12   Furthermore, as Ms. Penoza points out, State agency consulting doctors Comrie and

13   Collingwood reviewed Dr. Coder's opinion and did not find it too "vague."  Dkt. 22 at 9-12; Tr.

14   96, 107.  Rather, Dr. Comrie and Dr. Collingwood translated Dr. Coder's opinion into the

15   concrete limitation that Ms. Penoza was "moderately" limited in her ability to adapt to routine

16   changes in the workplace.  Tr. 96, 107.

17       In sum, the ALJ erred in failing set forth valid reasons for discounting Dr. Coder's

18   opinion that Ms. Penoza's ability to respond appropriately to routine changes in the workplace

19   was guarded.  Tr. 2206.  Moreover, the Court cannot confidently conclude this error was

20   harmless because the ALJ failed to either properly reject or account for this limitation in the

21   ability to adapt to changes in the workplace in evaluating the severity of Ms. Penoza's

22   generalized anxiety disorder at step two, nor was it included in a residual functional capacity

23   (RFC) as the ALJ's analysis did not reach that stage.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454

F.3d 1050, 1055-56 (9th Cir. 2006) (An error is harmless only if it is "inconsequential to the ultimate nondisability determination" and a Court cannot consider an error harmless unless it can "confidently conclude that no reasonably ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Dr. Coder also assessed Ms. Penoza with a GAF[5] score of 55. Tr. 2205. The ALJ gives little weight to this GAF score on the grounds that GAF scores generally are "based in part on the claimant's subjective reports", "consider[] secondary factors such as the claimant's unemployment, financial situation, and family stressors, which are not relevant to her disability" and do not directly correlate "to the severity requirements in the [SSA] mental disorders listings." Tr. 23. However, these generic reasons why GAF scores should be given little weight are not valid reasons to reject the opinions out of hand. *See, e.g., Vanbibber v. Colvin*, No. C-546-RAJ, 2014 WL 29665, at *2 (W.D. Wash. Jan. 3, 2014) (ALJ must give specific, legitimate reasons for discounting a GAF score, and a general, boilerplate discussion of why GAF scores do not correlate to a finding of disability is not sufficient); *McCarten v. Colvin*, No. C14-0225-JCC, 2014 WL 4269085, at  (W.D. Wash. Aug. 29, 2014) (finding the ALJ's generic reasons for rejecting GAF scores insufficient, including the rationale that they incorporated the claimant's

---

[5] The GAF score is "a subjective determination based on a scale of 1 to 100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000)). A GAF score falls within a given 10-point range if either the severity of symptoms or the level of functioning falls within the range. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as having no friends or the inability to keep a job. *Id.* at 32. A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

subjective complaints as well as external factors not relevant to the disability determination). Although GAF scores are "not dispositive of mental disability for social security purposes" they are relevant evidence that should be considered and can only be rejected for specific and legitimate reasons. *Vanbibber*, 2014 WL 29665 at *2-3 ("A GAF score that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)[6], and an ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the record, including medical source opinions, 20 C.F.R. §§ 404.1545(a), 416.945(e)."). Accordingly, because the ALJ did not reject Dr. Coder's GAF score based on legitimate reasons specific to the opinion, the ALJ erred. Moreover, because Dr. Coder's opinion regarding Ms. Penoza's ability to respond to changes in the workplace may provide some basis for the GAF assessment, the Court cannot confidently conclude this error was harmless.

Accordingly, on remand, the ALJ should reevaluate Dr. Coder's opinion that Ms. Penoza's ability to respond appropriately to routine changes in the workplace is guarded as well as the GAF assessment of 55.

### ii. *Dr. Comrie and Dr. Collingwood*

Ms. Penoza contends the ALJ also erred in evaluating the opinions of Dr. Comrie and Dr. Collingwood that she was moderately limited in her ability to respond appropriately to changes in the work setting.[7] Dkt. 22 at 9-12.

---

[6] As of the March 27, 2017 revision to the regulations, the definition of "medical opinion" is now provided in 20 C.F.R. 404.1527(a)(1) and 416.927(a)(1). However, the definition is largely unchanged from the prior version and provides that "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1) (2017).

[7] Ms. Penoza does not challenge the ALJ's rejection of Dr. Comrie's and Dr. Collingwood's opinions that

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

1    Dr. Comrie is a State agency consulting psychologist who reviewed Ms. Penoza's records

2    in July 2012. Tr. 89-97. Dr. Comrie opined that Ms. Penoza was moderately limited in her

3    ability to respond appropriately to changes in the work setting. Tr. 96. Dr. Comrie indicated that

4    this assessment was based on Dr. Coder's opinion that Ms. Penoza's "ability to respond to

5    changes is guarded due to low stress tolerance." *Id.* Dr. Collingwood, another State agency

6    consulting psychologist, confirmed Dr. Comrie's findings in January 2013. Tr. 99-108. The

7    ALJ is required to consider as opinion evidence the findings of State agency medical consultants

8    and to explain the weight given to such opinions. *See* 20 C.F.R. §§§§ 416.927(e), 416.913a,

9    404.1527(e), 404.1513a; *see also* SSR 96–6p (1996), 1996 WL 374180, at *2 (S.S.A.1996)

10   (stating that an ALJ "may not ignore" the opinions of State agency medical and psychological

11   consultants "and must explain the weight given to these opinions in their decisions"); *Sawyer v.*

12   *Astrue*, 303 Fed.Appx. 453, 455 (9th Cir. 2008). "The Commissioner may reject the opinion of a

13   non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143

14   F.3d at 1244.

15   The ALJ discounted Dr. Comrie's and Dr. Collingwood's opinions on this issue on the

16   ground that there is "nothing in the record" to support limitations in Ms. Penoza's ability to

17   respond to changes, and they rely on the opinion of Dr. Coder which "is also assigned little

18   weight." Tr. 22. Substantial evidence does not support the ALJ's rejection of Dr. Comrie's and

19   Collingwood's opinions on this basis. As the ALJ acknowledges, Dr. Comrie's and Dr.

20   Collingwood's opinions are based on evidence in the record, namely Dr. Coder's opinion which,

21   as discussed above, the ALJ improperly rejected. Accordingly the ALJ also harmfully erred in

22   evaluating Dr. Comrie's and Dr. Collingwood's opinions as she failed to either properly reject or

23

she is moderately limited in her ability to interact appropriately with the public. Tr. 22, 95, 106.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

account for this limitation in the ability to adapt to changes in the workplace in evaluating the

severity of Ms. Penoza's generalized anxiety disorder at step two, nor did she include it in a RFC

as she failed to reach that stage in her analysis. *See Stout*, 454 F.3d 1050, 1055-56.

Accordingly, on remand, the ALJ should also reevaluate the opinions of Dr. Comrie and

Dr. Collingwood that Ms. Penoza is moderately limited in her ability to respond appropriately to

changes in the work setting.

### 3.    Finding Generalized Anxiety Disorder Non-severe

Ms. Penoza also contends the ALJ erred in evaluating the severity of her generalized

anxiety disorder at step two by failing to follow the regulatory requirements of 20 C.F.R. §

404.1520a and failing to adequately discuss the medical evidence. Dkt. 22 at 14. The Court

agrees.

The regulations require the ALJ to follow a special psychiatric review technique in

determining whether a medically determinable mental impairment is severe. 20 C.F.R. §

404.1520a. Specifically, the ALJ must rate the degree of limitation in four broad functional

areas. *Id.* If the ALJ rates the degrees of the limitation in these areas as "none" or "mild," he or

she will generally conclude that the impairment(s) is not severe, "unless the evidence otherwise

indicates that there is more than a minimal limitation in [the] ability to do basic work activities."

20 C.F.R. §§ 404.1520a(c) & (d)(1). Here the ALJ found "none" or "mild" limitations in the

four areas assessed and concluded the impairment was not severe. Tr. 23. However, as

discussed above, the ALJ erred in evaluating the opinions of Dr. Coder, Dr. Comrie and Dr.

Collingwood which indicate more than a minimal limitation on Ms. Penoza's ability to perform

"basic work activities", namely in her ability to deal with changes in a routine work setting. *See*

20 C.F.R. § 404.1522(b)(6) (example of basic work activities include "dealing with changes in a

routine work setting."); SSR 85-28.  In light of the errors in evaluating these medical opinions, the ALJ's finding at step two that generalized anxiety disorder is not a severe impairment, is not supported by substantial evidence.

Accordingly, on remand, the ALJ should reevaluate the severity of Ms. Penoza's generalized anxiety disorder at step two.

**B.      Ms. Penoza's Testimony**

Ms. Penoza contends the ALJ erred in discounting the credibility of her subjective symptom testimony.  Dkt. 22 at 13-14.  The Court disagrees.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*, 572 F.3d at 591 (internal citations and quotation marks omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.  Here, the ALJ provided several clear and convincing reasons for discounting Ms. Penoza's testimony.

The ALJ properly considered Ms. Penoza's inadequately explained failure to seek treatment as a factor in discounting her credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008) (in assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)); SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996) (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").[8] Here, as the ALJ notes, despite complaining of debilitating pain and swelling in her elbows and hands, and despite the recommendation of her treating doctor that she see an orthopedist specializing in upper extremities, Ms. Penoza never sought treatment from the orthopedic specialist. Tr. 21, 82. Ms. Penoza offers no real explanation for her failure to follow through with the orthopedist except, perhaps, that she may have forgotten. Tr. 82. Under the circumstances, the ALJ reasonably concluded that Ms. Penoza's failure to follow through with seeing a specialist "suggests that her allegations regarding the 'lost use' of her hands are not as serious as alleged." Tr. 22.

The ALJ also properly considered Ms. Penoza's failure to appear at two scheduled consultative examinations as a factor in discounting the credibility of her testimony. *See Zamora v. Comm'r of Social Sec. Admin.*, 471 Fed.Appx. 579 (9th Cir. 2012) (unpublished) *(citing Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) ("the ALJ did not err in discounting [the claimant's]

---

[8] SSR 96-7p was superseded by SSR 16-3p subsequent to the ALJ's decision in this case. SSR 16-3p (effective March 16, 2016). However, even if evaluated under the new ruling, SSR 16-3p also provides that, in evaluating a claimant's symptoms, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p at *8.

credibility due to her failure to attend either of two scheduled consultative evaluations.").  In

September 2013, Ms. Penoza submitted a declaration indicating that she recalled Social Security

asking her to go to other doctors for her physical conditions.  Tr. 309.  She indicated she had

explained that her treating doctor, Dr. Brown, could do any examinations and that Social

Security had agreed Dr. Brown would be the appropriate person to examine her.  *Id.*  At the

hearing, Ms. Penoza also offered a separate explanation for her nonappearance indicating that

she only remembered missing one examination because, she believes, she mixed up the time and

arrived late after the office was closed.  Tr. 60.  The ALJ reasonably rejected Ms. Penoza's

explanations in light of the note from Disability Determination Services (DDS) indicating they

had spoken to the claimant about scheduling a physical evaluation and she had indicated she was

"not interested in any physical exams."  Tr. 2223.  The ALJ reasonably found the DDS notation

more reliable in light of the fact that it was documented in such close proximity to the time it

occurred (i.e. the same day).  *Id.*; Tr. 22.  Accordingly, the ALJ also reasonably considered Ms.

Penoza's failure to attend the two scheduled consultative examinations as a factor in discounting

her testimony.

The ALJ also properly considered the fact that Ms. Penoza received unemployment

insurance benefits during her alleged period of disability.  Tr. 20-21.  "Continued receipt of

unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant

holds himself out as capable of working."  *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir.

2014)[9] (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)).  Evidence that a claimant

has sought out employment during the period of claimed disability may also be considered in

---

[9] In *Ghanim*, the Court found that because the claimant promptly declined unemployment benefits, within a month of his onset date, it was improper to discount the claimant's testimony on that basis.  *See Ghanim*, 763 F.3d at 1165.  However, this is not the case here.

evaluating her credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly considered that the claimant had recently worked as a personal caregiver and had sought out employment since then in discounting her credibility). Here, the ALJ pointed out that Ms. Penoza received unemployment benefits from the fourth quarter of 2011 into the first quarter of 2012 (well after the onset of her alleged disability) which required her to certify she was ready, willing, and able to work while collecting benefits. Tr. 20-21. The ALJ also noted that Ms. Penoza continued to seek employment as a software developer and tester (jobs she had worked for many years prior to her alleged disability onset date) subsequent to her alleged disability onset date in January 2011. *Id.* Moreover, the ALJ noted that Ms. Penoza indicated that if she had gotten a call from one of the jobs she applied for, she would have tried to do it. *Id.* The ALJ reasonably found this evidence inconsistent with Ms. Penoza's allegations of disabling symptoms commencing in January 2011.

In sum, the ALJ provided several valid reasons for discounting the credibility of Ms. Penoza's symptom testimony.[10]

## C.    Allegations of ALJ Bias

Ms. Penoza contends the ALJ is biased against her and claimants like her. Dkt. 22 at 16-27. Specifically she contends the record establishes that ALJ Sloane is biased "in her decisions against claimants [like herself] (a) associated with the application for (or receipt of) DSHS and/or (b) claimants with psychological impairments evidenced by GAF scores or diagnoses of a

---

[10] The ALJ also gave other reasons for discounting Ms. Penoza's testimony. Tr. 19-21. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reasons for discounting Ms. Austin's testimony. *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 18

1   personality disorder." Dkt. 22 at 15. Ms. Penoza contends that the record establishes due

2   process, statutory and regulatory violations and that ALJ Sloan's bias should disqualify her from

3   re-hearing Ms. Penoza's claim on remand. *Id.* at 15, 27.

4       ALJs in social security disability cases are presumed to be unbiased. *Schweiker v.*

5   *McClure*, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict

6   of interest or some other specific reasons for disqualification." *Id.* "'[E]xpressions of

7   impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

8   imperfect men and women … sometimes display,' do not establish bias." *Rollins v. Massanari*,

9   261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56, 114

10  S.Ct. 1147, 127 L.Ed. 2d 474 (1994)). A claimant asserting bias must "show that the ALJ's

11  behavior, in the context of the whole case, was 'so extreme as to display clear inability to render

12  fair judgment.'" *Rollins*, 261 F.3d at 858 (quoting *Liteky*, 510 U.S. at 551). The burden of

13  establishing a disqualifying interest "rests on the party making the assertion." *Id.* at 196.

14  Moreover, "actual bias," rather than the "mere appearance of impropriety," must be shown in

15  order to disqualify an ALJ. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003).

16      Ms. Penoza fails to meet the heavy burden of showing bias in this case. In support of her

17  claim of bias, Ms. Penoza presents 84 decisions from ALJ Sloane on other claimants' social

18  security disability applications, as well as associated medical records. Tr. 511-2178. Ms.

19  Penoza contends that ALJ Sloane's attribution of "little" or "no weight" to opinions of DSHS

20  doctors in a high percentage of these cases show a pattern or practice of bias. Dkt. 22 at 15-27.

21  Specifically, Ms. Penoza contends the statistical evidence, with respect to these 84 decisions,

22  demonstrates that:

23          Forty-four of the 84 submitted decisions contain a reference to DSHS
            doctors and to the weight given to 86 opinions from such doctors. The

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 19

> ALJ gave "little", "minimal", "limited", "very little" or "no" ("little") weight to 71 of those 86 opinions (81%) and only gave "great" or "significant" ("significant") weight to 2 of those 86 opinions. Moreover, in the great majority of the remaining 13 occasions when the ALJ gave "some" weight to "DSHS doctors," "some" weight meant that the ALJ accepted only the portions of the opinion that did not support a finding of disability, and rejected the portions of the opinion that supported disability. In short, this ALJ gave "some" or "significant" weight to fewer than 5 opinions by DSHS doctors supporting disability and gave "little" weight to the more than 80 opinions by DSHS doctors supporting disability.

Dkt. 22 at 17-18. Ms. Penoza also contends the evidence shows that:

> only one of the 34 decisions that [included reference to DSHS and GAF] … was favorable to the claimant (2.9%), while 17 of the 24 decisions were favorable (71%) to the non-DSHS/GAF claimants. … Thirty-three (33) of the 34 claimants who submitted both type[s] of evidence [DSHS/GAF] lost; 41 of the 44 claimants who submitted evidence for DSHS lost, and 47 of 50 claimants who submitted GAF evidence lost. On the other hand, 17 of the 24 claimants who submitted neither form of evidence won their case. … [Moreover,] ALJ Sloan found only 1 of 34 claimants who submitted both of the above type of evidence to be "credible," "generally credible," or "sufficiently credible."

Dkt. 22 at 22-23.

Several courts have found that ALJ bias cannot be proven by statistical analysis alone, but that an ALJ's alleged bias must be judged on a case by case basis. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 08–4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009) (noting that an ALJ's impartiality should not be judged by statistics of how that judge has previously ruled); *Smith v. Astrue*, No. H–07–2229, 2008 WL 4200694, at *5–6 (S.D. Tex. Sept. 9, 2008) (finding that an ALJ's approval rate of only 7.19 percent compared to an average approval rate of 52.99 percent was troubling, but insufficient, in and of itself, to show bias). However, even if statistical evidence were relevant to the issue of ALJ bias, Ms. Penoza fails to demonstrate that her sample of cases is "random, unbiased and statistically significant." *Cope v. Colvin*, No. C15-1744, 2016 WL 6439940, at *9 (W.D. Wash Nov. 1, 2016); *see also, Yost v. Colvin*, No. C15-

1279, 2016 WL 2989957, at *11 (finding plaintiff erred in alleging ALJ bias by failing to demonstrate that samples in sample were randomly selected and statistically sound); *Smith v. Colvin*, No. C14-1530 TSZ, 2016 WL 8710029, at *6 n.4, *6-7 n.5 (finding the same); *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (finding statistical evidence of lower than average approval rating involving claimants who are obese women with fibromyalgia and mental impairments inadequate to establish general bias against claimants with those characteristics). Ms. Penoza asserts that her sample of decisions is statistically representative because cases are "randomly assigned" to ALJs and the decisions "are identified in the record by dates and law firms." Dkt. 27 at 11. However, Ms. Penoza fails to establish that the 84 cases represent a random selection of cases actually assigned to ALJ Sloane. *See Cope*, 2016 WL 6439940, at *9. For instance, Ms. Penoza does not compare the demographics or case history of the claimants represented by the law firms in these cases to those of other claimants who appear before ALJ Sloane, nor does Ms. Penoza explain how the law firms from which her sample of cases was drawn were selected. *See id.*

Moreover, adverse results do not automatically equate to bias and statistics cannot be viewed in a vacuum. The statistical evidence cited by Ms. Penoza here "has little, if any, probative value 'because it is not moored to reversal rates or any other objective standard that properly would allow a trier of fact to draw an inference of bias.'"[11] *Cope*, 2016 WL 6439940, at *9 (quoting *Doan v. Astrue*[12], 2010 WL 1031591, at *15 (S.D. Cal. March 19, 2011); *see*

---

[11] Ms. Penoza also notes that in some of the 84 decisions, ALJ Sloane cited legally invalid or otherwise insufficient reasons for discounting DSHS doctors' opinions and GAF scores. Dkt. 22 at 15-19, 24-26. However, that ALJ Sloane may have erred in giving invalid reasons for discounting some of these opinions and GAF scores is not sufficient to establish bias. Although the errors may have served as a basis for remand in those cases, Ms. Penoza fails to demonstrate they amount to anything more than just errors.

[12] *Doane* was reversed in part on appeal on the grounds that the claim for benefits was moot thus

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 21

*Wrightman v. Colvin*, No. C15-1557, 2016 WL 4425318 (W.D. Wash. Aug. 22, 2016) (finding "[t]he small assortment of prior decisions by the ALJ – within which Wrightman does not indicate how many, if any, were reversed upon review – does not demonstrate the alleged bias or routine misapplication of the law.").  Thus, it may be that these statistics reflect little more than that, in many cases, ALJ Sloan correctly afforded little weight to many of the DSHS doctors' opinions and GAF scores and properly denied benefits.  However, absent additional information and a showing that "the data provided is random, unbiased, and/or statistically significant," Ms. Penoza's claim of bias relies largely on speculation and fails to rebut the presumption of impartiality on the part of the ALJ in this case.  *Cope*, 2016 WL 6439940, at *9.

Although Ms. Penoza makes no specific argument on the issue, the Court notes that the record also includes several declarations from attorneys who have appeared before ALJ Sloane.  Tr. 342-346.  The Court agrees with the analysis of similar declarations in *Cope*, 2016 WL 6439940, at *10, that, while troubling, these declarations are insufficient to establish bias on the part of ALJ Sloane.  *Cope*, 2016 WL 6439940, at *10.  Several of the declarations appear to reflect general perceptions of specific attorneys but are unsupported by evidence or specific examples of allegedly biased conduct.  Tr. 342-346.  Moreover, the few specific examples given of ALJ Sloane's comments or behavior are insufficient, without more, to meet the heavy burden of establishing bias.  *See Rollins*, 261 F.3d at 858 ("'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women … sometimes display,' do not establish bias.").  Ms. Penoza also does not argue that ALJ Sloane

depriving the district court of jurisdiction over the merits of the case.  *See Doan*, 2010 WL 1031591, *aff'd in part and rev'd in part*, 464 Fed.Appx. 643 (9th Cir. 2011)).  However, while in *Doane* it was ultimately determined that the district court need not have reach the merits of the bias claim, the reasoning cited therein is applicable to the facts of the instant case.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 22

exhibited specific behavior toward her in this case that demonstrated any particular bias or that the alleged bias affected this particular decision. *See Rollins*, 261 F.3d at 858 (a claimant asserting bias must "show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." (internal quotations and citation omitted)).

In sum, the Court finds Ms. Penoza has failed to meet her burden of demonstrating that ALJ Sloane is biased against her and claimants like her. Accordingly, the Court declines to direct the Commissioner to reassign this case on remand. However, nothing in this Order should be read to prevent the Commissioner from reassigning this matter to a different ALJ on remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should: (1) at step two reevaluate Ms. Penoza's psoriatic arthritis and spondylitis, including Dr. Brown's opinion, as well as the severity of Ms. Penoza's generalized anxiety disorder; (2) reevaluate Dr. Coder's opinion that Ms. Penoza's ability to respond appropriately to routine changes in the workplace is guarded as well as the GAF assessment of 55; (3) reevaluate the opinions of Dr. Comrie and Dr. Collingwood that Ms. Penoza is moderately limited in her ability to respond appropriately to changes in the work setting; and (4) as necessary determine the RFC and proceed with steps four and five of the sequential evaluation process.

DATED this 28th day of April, 2017.

_Richard A. Jones_

The Honorable Richard A. Jones
United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 24